**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRIS P. BAUER,                                                    Case No. 1:10-cv-516

        Plaintiff,                                              Barrett, J.
                                                                  Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Chris P. Bauer filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.   *See* 42 U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents two errors, which the Defendant disputes.   As explained below, I conclude that the finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

The administrative record in this case is lengthier than most, in part because it spans more than a decade to date.  Since fairly early in the process, Plaintiff has been represented by the same attorney.

Plaintiff first filed an application for SSI benefits on April 7, 2000, alleging disability since June 1, 1999 based upon suspected emphysema, herniated disc and cervical spurs, pain, radiculopathy and stenosis of the spine (Tr. at 15).  After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ").  Following a two-day evidentiary hearing at which

1

Plaintiff was represented by Mark Naegel (see Tr. 356-416), ALJ Larry Temin issued a written opinion dated February 22, 2002 in which he determined that Plaintiff was not disabled.  In relevant part, ALJ Temin reasoned in his first opinion that: (1) Plaintiff's impairments did not meet or equal the requirements for any Listed impairment in Appendix 1 to Subpart P; (2) Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work; and (3) significant numbers of jobs existed which Plaintiff could perform (Tr. at 20-21).  The Appeals Council denied Plaintiff's request for review of the 2002 decision, and Plaintiff timely appealed to this Court.  (Tr. 460, Case No. 1:03-cv-695).

During the course of Plaintiff's first appeal to this Court, the Commissioner filed a motion seeking a voluntary remand for further proceedings.  Although Plaintiff opposed that motion, on December 21, 2004 the presiding Magistrate Judge, through a Report and Recommendation ("R&R"), recommended that the motion be granted (Tr. 466; Doc. 20 in Case No. 1:03-cv-695).  The presiding District Judge adopted that R&R, and Plaintiff appealed to the Sixth Circuit Court of Appeals.  The appellate court affirmed the remand on the terms proposed by the district court (Tr. 475).  In a *per curiam* unpublished opinion dated February 24, 2006, the Sixth Circuit specifically directed the ALJ to "solicit and entertain medical evidence as to whether Bauer meets Listing 1.04A, effective February 19, 2002" concerning his back impairment (*Id*.).  In his 2002 opinion, ALJ Temin had noted that "some of the required findings have occasionally been reported, but they were not consistently present."  Part of the purpose of remand was to reconsider the evidence in light of the fact that the newly revised regulation, Listing

1.04A, had dropped a previous requirement under a former Listing (1.05C) that symptoms persist "for at least 3 months despite prescribed therapy" (Tr. 476).

On remand to the Appeals Council, that body further remanded to ALJ Temin to conduct a new administrative hearing, as directed by the Court. The new hearing was held on May 2, 2007 at which Plaintiff appeared, again represented by counsel. In addition to hearing testimony from Plaintiff, the ALJ heard testimony from a medical expert (ME) and a Vocational Expert. (Tr. 417-479). On August 6, 2007, the ALJ determined that Plaintiff was not disabled from September 1, 2001 through December 31, 2006, because his impairments did not prevent him from performing his past relevant work as a telemarketer. (Tr. 426-439). By contrast, the ALJ determined that Plaintiff was disabled for the closed period between June 1, 1999 and August 31, 2001, and again beginning on January 1, 2007. (*Id.*). On July 1, 2010, the Appeals Council declined jurisdiction, leaving the ALJ's decision in place as the final decision of the Commissioner. (Tr. 417).

Plaintiff filed the instant complaint on July 30, 2010 in order to challenge the latest decision by the ALJ. The ALJ's "Findings," which represent the rationale of the August 6, 2007 decision, were as follows:

1. The claimant alleges disability since June 1, 1999 and has not engaged in substantial gainful activity since the alleged onset of disability.

2. Since the alleged onset date, the claimant's severe medically determinable impairments have been degenerative disc disease in the cervical and lumbar spine (status post C6 and C7 foraminotomies in July 2001), chronic obstructive pulmonary disease, and alcohol dependence. Since early 2007, he has additional severe impairments of left carpal tunnel syndrome and left rotator cuff tear and impingement.

3. From June 1, 1999 through August 31, 2001, the claimant's cervical disc disease was accompanied by findings that medically equaled the

requirements of Listing 1.04A to Appendix 1, Subpart P, Regulations No. 4 (20 CFR, Part 404), based on testimony of the medical expert.

4. The claimant was under a "disability," as defined in the Social Security Act, during the closed period from June 1, 1999 through August 31, 2001. 20 CFR 416.920(d).  The claimant's disability ceased on August 31, 2001 based on evidence of medical improvement.

5. The claimant's allegations regarding his physical symptoms and functional limitations were supported by the medical evidence and credible to the extent of limiting him to a reduced range of sedentary work.

6. From September 1, 2001 through December 31, 2006, the claimant had the following limitations due to his physical impairments: He could lift/carry and push/pull up to ten pounds occasionally, five pounds frequently; in an eight-hour workday, he could stand and/or walk a total of two hours (one hour at a time).  The claimant is a left-handed individual and could only occasionally perform firm, forceful grasping with his (dominant) left hand. He could only occasionally stoop, kneel, crouch, climb ramps or stairs, and perform work ...requiring forceful use of the right lower extremity.  He could never crawl, climb ladders, ropes, or scaffolds, use vibratory tools, or work at unprotected heights.  He also needed to avoid concentrated exposure to fumes, noxious odors, dusts, or gases.

7. From September 1, 2001 through December 31, 2006, the claimant also had severe and ongoing alcohol dependence.  Because of this, he was unable to remember and carry out even short and simple instructions.  He could sustain concentration and attention for only 45 minutes, then required a rest break of 15 minutes.  He could not interact with coworkers, supervisors, or the general public and would have been absent from the workplace at least five days per month.

8. If the claimant were not abusing alcohol during this period, he would have only the aforementioned physical limitations (there are no other diagnosed mental impairments); and with those physical limitations, he could have performed his past relevant work as a telemarketer (telephone solicitor) both as he performed it and as the job is customarily performed in the economy.

9. From September 1, 2001 through December 31, 2006, the claimant would not have been disabled if he stopped drinking.  Alcoholism was a contributing factor material to his disability during that period, making him ineligible for disability payments under Title XVI of the Social Security Act.

10. Since January 2007, the claimant's residual functional capacity has declined based on evidence of either worsening cervical radiculopathy and/or additional severe left upper extremity impairments (left shoulder impingement and left carpal tunnel syndrome).

11. From January 1, 2007 to the present, the claimant has had all the aforementioned physical limitations; however, in addition, he is only occasionally able to perform handling and fingering activities with his (dominant) left hand.

12. From January 1, 2007 to the present, the claimant could not have performed his past relevant work as a telemarketer (telephone solicitor), either as he did it or as customarily performed, due to the additional manipulative limitations with regard to his dominant hand.

13 Born July 5, 1953, the claimant was 53 years old and "closely approaching advanced age" on January 1, 2007.

14. The claimant has a high school education.

15. There are no acquired work skills transferable to jobs within the claimant's residual functional capacity.

16. Considering the claimant's vocational profile and residual functional capacity for no more than sedentary work, Rule 201.14 in the Medical-Vocational Guidelines at Appendix 2, subpart P, Regulations No. 4 directs a decision of "disabled" based upon strength limitations alone.  Based on this rule, the claimant cannot make an adjustment to any work that exists in significant numbers in the national economy.

17. The claimant was again under a "disability," as defined in the Social Security Act, beginning January 1, 2007; and such disability has continued at least through the date of this decision.  20 CFR 416.920(g).

(*Id*. at 438-439).  Thus, while the ALJ concluded that Plaintiff should be awarded SSI benefits for a closed period (from June 1, 1999 through August 31, 2001), and again following January 1, 2007, he concluded that Plaintiff was not entitled to benefits for the period of time between September 1, 2001 and December 31, 2006.

Once again appealing to this Court, Plaintiff asserts that the ALJ committed errors that require reversal or, at least remand.  Specifically, Plaintiff now contends: 1)

the ALJ erred by relying upon a consulting physician's testimony to conclude that Plaintiff was not disabled between September 1, 2001 and December 31, 2006; and 2) the ALJ erred in finding "evidence of medical improvement" and in failing to acknowledge evidence that Plaintiff met the criteria for Listing 104 between September 1, 2001 and December 31, 2006.  The asserted errors are in essence one and the same.  Because this Court concludes that the ALJ's decision is not supported by substantial evidence, remand is required.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the referenced errors led the ALJ to reach a faulty conclusion at the third step of the sequential analysis, in determining that Plaintiff did not meet or equal Listing 1.04A during the specified period between September 1, 2001 and December 31, 2006.  Because the ALJ failed to adequately explain his basis for adopting the opinion of a non-examining expert over the opinions of a treating physician and examining expert, remand is required.  On remand, two additional errors also should be corrected.

### B.  Listing 1.04A

Listing 1.04A concerns disorders of the spine resulting in compromise of a nerve root of the spinal cord, and requires:

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04A.  The ALJ determined that Plaintiff met or equaled this Listing due to demonstrated radiculopathy and therefore was entitled to benefits through August 31, 2001, but that his disability "ceased on August 31, 2001 based on evidence of medical improvement."

No one disputes that Plaintiff has a severe cervical spine disorder including degenerative changes, disc herniation, and stenosis.  However, the Defendant argues that Plaintiff benefitted from surgery performed in early July 2001, such that he enjoyed a five year, three month period of time during which he was no longer disabled.  Early in 2007, the ALJ determined (and the parties do not dispute), Plaintiff again became

8

disabled due to both his prior spinal impairments, and additional impairments relating to a rotator cuff problem and carpal tunnel syndrome.

### 1.  The Cause and Effect of Plaintiff's Lack of Records

The primary issue in this case concerns the paucity of medical records during the disputed five-year period of "medical improvement." In fact, it is clear that the ALJ partially based his finding of medical improvement upon the lack of record evidence supporting continued disability.  Both a consulting physician and the ALJ heavily relied upon a finding of "insufficient evidence" to concluce that Plaintiff failed to prove that his Listed impairment continued post-surgery up until 2007, when the medical record of his disability again became more developed. (Tr. 433).  In other words, Plaintiff's failure to seek treatment and corresponding scarcity of clinical records is the foundation for the ALJ's determination that Plaintiff failed to prove that his disability continued unabated for those years.  "Medical improvement can...be assumed from the claimant's lack of follow-up treatment after the surgery....." (*Id.*).

At least two reasons exist for the lack of relevant records in this case.  One is attributable to counsel (Tr. 949-952, 989), but the primary reason is the undeniable fact that Plaintiff failed to seek or obtain any consistent medical care during the disputed time period.  Although Plaintiff periodically visited emergency rooms for acute care during the relevant time period, records reflect that virtually all of those visits were for assaults or for issues relating to substance abuse problems.

Plaintiff certainly has a troubled background.  He is an acknowledged alcoholic with a history of cocaine and other substance abuse, and has been both periodically incarcerated and homeless (*see, e.g.* Tr. 539, 591).  At his most recent hearing, Plaintiff testified that he was incarcerated from 1995 until sometime in 2000 (Tr. 954).  In

addition to frequently noting evidence of intoxication, examining physicians have described Plaintiff as "somewhat argumentative," (Tr. 605), a trait that is evident to this Court from a review of the two hearing transcripts as well as notations in medical records. Aside from Plaintiff's chronic substance abuse issues, however, Plaintiff's failure to seek consistent medical treatment from 2002 through 2006 is explained by his lack of medical insurance during that time period. (Tr. 988).

While a failure to seek treatment may be considered as evidence counseling against a finding of disability, SSR 96-7p requires the adjudicator to consider any reasons offered for that failure, including mental illness or a lack of insurance. *See Green v. Comm'r of Social Sec.,* 2008 WL 4449854 at *9 (E.D. Mich., Oct. 2, 2008); *Blakeman v. Astrue*, 509 F.3d 878, 888 (8th Cir. 2007). In this case, there is no evidence that the ALJ considered Plaintiff's substance abuse issues, lack of insurance, and/or homelessness during the disputed period prior to drawing the inference that Plaintiff's failure to seek regular medical care was evidence of medical improvement. Because unrelated errors in this case require remand on other grounds, the ALJ's unfounded inference in this case should be re-examined.

Persistence pays. That aphorism has several applications to the present case. Plaintiff's counsel, notwithstanding his failure to obtain relevant medical records *prior to* Plaintiff's most recent hearing, has doggedly pursued his client's claim for now more than a decade. Plaintiff claims that the same Listed disability determined by the ALJ to exist through August 31, 2001 and again after 2007 persisted throughout the intervening period of years. However, the stumbling block to Plaintiff's award of benefits remains Plaintiff's lack of persistence in obtaining medical care during those years.

In an effort to overcome the hurdle posed by the bareness of the record, Plaintiff first argues that because the Commissioner determined that he met or equaled Listing 1.04A through August 31, 2001, Plaintiff should be presumed to have been disabled throughout the disputed period in which records were sparse, if not wholly absent. Pursuant to 42 U.S.C. §423(f), a recipient of benefits is entitled to a presumption that his disability continues, and the Commissioner may not terminate benefits based upon medical improvement absent substantial evidence of the same. Certainly this would be an easier case if Plaintiff were entitled to such a presumption.  However, "[b]y its terms, the plain language of §423(f) does not apply to ...[a] pending claim for benefits" when benefits have not yet been awarded.  *Combs v. Comm'r of Social Security*, 459 F.3d 640, 660 (6th Cir. 2006).

Thus, on the record here, Plaintiff himself maintains the burden of proving that his disability continued throughout the relevant period, and cannot rely on any "presumption" of disability.  This Court will uphold the Commissioner's decision if substantial evidence can be found to support it, even if this Court might have reached a different decision.  That said, it obviously becomes more difficult to find substantial evidence when the record in question is as bare as it is in this case.  Recognizing the problem, and guided by the previous directions on remand, ALJ Temin did his best by employing a non-examining physician who was board certified in physical medicine and rehabilitation to serve as a Medical Expert (ME) during the evidentiary hearing.[1]

There is no question that an ALJ may use and rely upon the testimony of a non-examining medical expert in appropriate cases.  *See Buxton v. Halter*, 246 F.3d 762,

---

[1]Due to Plaintiff's failure to submit all relevant records prior to the hearing, Dr. Watson did not have access to all relevant records prior to his testimony.

775 (6th Cir. 2001).  However, a medical expert's opinion must be based on objective reports, data and opinions.  *See Barker v. Shalala,* 40 F.3d 789, 794-95 (6th Cir. 1994).  In this case, Dr. Watson's opinion did not support a finding of medical improvement for the disputed period, because it was not based upon objective data so much as upon a *lack* of such data.

### 2.  The Consulting Medical Expert, Dr. Watson

The ALJ's heavy reliance on Dr. Watson's testimony to find "medical improvement" during the disputed period constitutes error, because in so doing the ALJ improperly rejected the opinion of a treating physician as well as that of an examining consultant.

As Plaintiff argues, Dr. Watson's opinions as to Plaintiff's medical improvement for the 2001-2006 period of time were equivocal in terms of Plaintiff's alleged medical improvement to non-disability status.  For example, Dr. Watson repeatedly testified that it was "difficult to say" whether Plaintiff met Listing 1.04A even between 1999 and 2001 due to the paucity of medical records, although he acknowledged that Plaintiff "probably" equaled the listing during that time period (Tr. 979, 985).  After the July 5, 2001 surgery, Dr. Watson testified: "That's when we have the real problems because we don't have records" and because "then we come to the end two examinations, [that] somewhat [contradict] each other."  (Tr. 979).  Dr. Watson acknowledged that an examination by consulting physician Dr. Sheridan showed that Plaintiff "probably" continued to meet the Listing during the disputed period, but that an examination by another consultant, Dr. Bailey, was at least somewhat in conflict.  (Tr. 979-980).  However, he also admitted that Dr. Bailey's report was internally inconsistent, and that

unlike Dr. Sheridan, Dr. Bailey apparently had not reviewed Plaintiff's prior records.  (Tr. 973, 983-984).

Dr. Watson repeatedly stated that he simply did not know to what extent Plaintiff's disability might have continued during the disputed period.  (See Tr. 981, "I really don't know without the records"; *see also* Tr. 983, responding: "I don't have any idea" when asked if Plaintiff met the criteria while treating with Dr. Caudell).  Among the few records available are those of Dr. Caudell, who treated Plaintiff for pain early in the disputed period.  Dr. Caudell's records refer to upper extremity motor weakness, muscle spasm, and limitation in Plaintiff's range of motion, which Dr. Watson conceded supported Plaintiff's contention that his Listed disability continued unabated following his July 2001 surgery.  (Tr. 988).  However, Dr. Watson discounted those clinical findings on the basis that "[t]he examinations of the pain doctors aren't the most reliable in my experience."  (Tr. 982).

In addition to the records of Dr. Caudell, Plaintiff's records during the disputed period include notes from occasional treatment in various local emergency rooms.  The ALJ noted that these records, largely submitted after the evidentiary hearing and therefore not reviewed by Dr. Watson, reflected "consistently normal neurological findings" and "barely mention any complaints of neck or left upper extremity symptoms." (Tr. 433-434).  While accurate, Dr. Watson testified that ER records might not accurately portray all neurological or spinal cord symptoms, given that the examining physicians were focused on acute issues that involved "bigger things than his radiculopathy."  (Tr. 986).  In addition, when objective studies were performed, such as a CT scan following an April 2006 assault, significant spinal findings were noted.  (Tr.

594-595). Dr. Watson also failed to discuss (or presumably review) studies performed in May and September 2002. (Tr. 919).

On the record presented, the ALJ's almost exclusive reliance upon Dr. Watson's testimony to conclude that Plaintiff had achieved medical improvement two months post-surgery until August 31, 2006 falls short of the "substantial evidence" required to uphold the Commissioner's decision. In addition to the remarkable lack of evidence of medical improvement, the ALJ failed to adequately explain his decision to credit the opinions of Dr. Watson, a non-examining consultant, over the contrary opinions of both a treating physician (Dr. Caudell) and an examining consultant, Dr. Sheridan.

### 3. Treating Physician Dr. Caudell

The Social Security regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

The opinions of Dr. Caudell, as a treating physician, ordinarily would be entitled to controlling weight. However, in determining the weight to give to *any* medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.*

In this case, Dr. Caudell is a pain specialist, not a neurosurgeon, who treated Plaintiff for a matter of months, not years. Nevertheless, he observed muscle weakness, sensory loss, and diminished reflexes during a clinical examination conducted on August 10, 2001. (Tr. 318-319). While the ALJ credited those findings, he inexplicably assumed that all of those symptoms- which satisfied Listing 1.04A as of the date of that exam - resolved just three weeks later, on August 31, 2001. The medical evidence suggest otherwise. Even the August 10, 2001 record reflects that Plaintiff's July 2001 surgery resulted in "decreased muscle wasting in the left upper extremity *but also increased sensory loss*," a fact not referenced by the ALJ (Tr. 319, emphasis added). Plaintiff's muscle strength was still decreased at 4/5 in all muscle groups in the left upper extremity, with sensory loss noted in the left forearm, and diminished reflexes in the left upper extremity. (Tr. 319).

Dr. Caudell again examined Plaintiff on December 5, 2001, at that time providing responses to a medical questionnaire indicating that Plaintiff met or equaled Listing 1.05, the listing in effect on that date, but subsequently replaced by Listing 1.04A. (Tr. 514). The ALJ discounted Dr. Caudell's December 2001 opinion on grounds that his "responses...were deficient and not very persuasive." (Tr. 433). Specifically, the ALJ believed that Dr. Caudell "merely responded in the affirmative to each question and was not forthcoming with any supportive findings, except to cite motor weakness in the left upper extremity (of unspecified severity)." (*Id*.). However, the December 5, 2001 opinion finds support in Dr. Caudell's clinical record of left upper extremity motor weakness on that date and his comment that Plaintiff's symptoms had lasted more than one year (a reference to the pre-surgical period) and exhibited "recent worsening." Other clinical notes leading up to the December 5, 2001 opinion reflect continued post-

surgical radiculopathy (Tr. 521) with "no change in symptoms" over time (Tr. 517) until the December "worsening."  In the absence of other evidence to the contrary, or at least significantly more discussion of the evidence, the ALJ's rejection of this treating physician's opinion in favor of the contrary opinion of a non-examining ME does not satisfy the "good reasons" test.

### 4. Examining Consultants Dr. Sheridan and Dr. Bailey

As referenced above, Dr. Watson's opinion also was in conflict with at least a portion of the opinion of Dr. Sheridan, a consultant who - unlike Dr. Watson - actually examined Plaintiff on April 25, 2007.  (Tr. 616-625).  Dr. Sheridan is a certified independent medical examiner and a fellow in both the American Academy of Orthopaedic Surgeons and in the American Academy of Disability Evaluating Physicians.  (Tr. 625).

Noting that by Plaintiff's own reported history he "was good for about five months [post-surgery] until December 2001" when he experienced a reoccurrence of symptoms, Dr. Sheridan opined :

> I think he meets the listings of 104 of the Social Security Listings of Impairments for Musculoskelatal System in that he had evidence of left C6 and 7 radiculopathies and a left S1 radiculopathy.  I believe that the documentary evidence of record demonstrates that Mr. Bauer probably met or equaled the requirements of Listing 1.05C from the date that he filed his claim for SSI beginning, April 7, 2000 to February 19, 2002 and those of the "new" Listing 1.04 from that time to the present and ongoing. In my opinion, the Listings 1.05C and the 1.04 were met or equaled for the period covered by the application.
>
> I think that in addition to these medical impairments he has the other medical impairments that I have heretofore listed and I think that this constellation of impairments renders him capable of no more than sedentary work for less than half a workday.

(Tr. 624). The Defendant focuses on Dr. Sheridan's use of the words "I think" to suggest ambiguity in his opinion. However, in context there is no ambiguity and Dr. Sheridan clearly stated that all of his opinions were rendered "within reasonable medical probability." (Tr. 625).

In fact, the ALJ fully adopted Dr. Sheridan's April 26, 2007 examination findings. The ALJ referred to those findings and to a February 2007 MRI report to conclude that Plaintiff was disabled as of January 1, 2007, based upon weakness in Plaintiff's deltoid muscle and other symptoms. However, the ALJ simply *did not discuss at all* Dr. Sheridan's retroactive opinion that Plaintiff continued to meet or equal Listing 1.04A from February 2002 through the present.

Plaintiff suggests that Dr. Sheridan's opinion should have been controlling. The Defendant acknowledges that the ALJ's failure to give any explanation for rejecting the opinion would not, on its face, satisfy the regulatory requirement that an agency provide "good reasons" for failing to give controlling weight to a treating physician's opinion. See 20 C.F.R. §416.927(d)(2); *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). However, the Defendant correctly points out that Dr. Sheridan was not a treating physician, but instead was a one-time examining consultant. Therefore, the "good reasons" requirement does not strictly apply.

Nevertheless, the ALJ's failure to discuss in any fashion this highly relevant portion of Dr. Sheridan's opinion is problematic. Regulations require consideration of *all* medical opinions, not merely those of treating physicians. *See* 20 C.F.R. §1527(d)("Regardless of its source, we will evaluate every medical opinion we receive."). The opinion of an examining physician like Dr. Sheridan should be given

greater weight than a non-examining consultant like Dr. Watson, at least absent some reasonable explanation.  *Id.,* at  §1527(d)(1).

The Defendant contends that the ALJ's silence on the issue can be excused in this case based upon medical evidence that undermines Dr. Sheridan's opinion, including the previously discussed emergency room records, and the December 7, 2006 opinion of a second examining consultant, Dr. Jennifer Bailey.  (Tr. 607).

Dr. Bailey's specialty is not listed, but her December 7, 2006 examination noted "normal" motion of Plaintiff's spine and "normal" strength in the extremities, with no atrophy and intact sensation and reflexes (Tr. 604-07).  Overall, Dr. Bailey concluded that Plaintiff's entire musculoskelatal examination was normal (Tr. 607).  She stated that she did "not suspect radiculopathy," and believed Plaintiff to be capable of "light" work. (*Id.*).   On the other hand, her clinical examination notes from the same exam contradictorily reflect "diminished grip" and "numbness" in Plaintiff's left hand (Tr. 609, 613).  She additionally opines that "weakness of Left upper extremity likely from cervical radiculopathy limits his ability" to use his left hand (Tr. 613).  This internal inconsistency was explicitly noted by Dr. Watson, as was Dr. Bailey's lack of review of Plaintiff's full medical records.  Nonetheless, Dr. Watson - and the ALJ in turn - accepted Dr. Bailey's opinion that she did not suspect radiculopathy over the more detailed analysis of Dr. Sheridan.  This was error.

### 5.  Other Medical Evidence

As previously discussed, many of Dr. Watson's opinions were often equivocal. At one point he testified that Plaintiff's left elbow and wrist weakness "could be" residual dating back prior to his 2001 surgery.  (Tr. 976-977, 980).  However, it was clear that overall Dr. Watson believed that at least some of Plaintiff's arm weakness, relating to

his deltoid muscle, was a new problem rather than a continuing one that proved that he continued to meet or equal Listing 1.04A. (Tr. 980). Dr. Watson assumed that Plaintiff's pre-surgical records showed evidence only of nerve root involvement at C6-C7 (which does not affect the deltoid muscle), and not at C5-C6. (*See* Tr. 974, 980, explaining that deltoid weakness correlates with C5 impingement, not C6-C7). Contrary evidence - if reviewed by Dr. Watson- was not discussed. For example, Dr. Stewart Dunsker provided a neurosurgical consultation prior to Plaintiff's 2001 surgery in which he opined that Plaintiff's records demonstrated "a nerve root cut off at both C5-C6 and C6-C7 on the left." (Tr. 324, see also 344-347). In addition, an MRI of Plaintiff's cervical spine dated September 13, 2002 showed degenerative changes with hypertrophic spurring and cervical disc space narrowing (Tr. 919). The same MRI showed diffuse disc bulging at C3-4 and herniation at both C5-6 and C6-7. (*Id.*). Despite this pre-2001 evidence of C5-C6 involvement, Plaintiff's surgery was limited to C6-C7 (Tr. 310-315). On remand, all relevant medical records should be reviewed.

### 6. Plaintiff's Incarceration

The ALJ should also consider on remand the application of 42 U.S.C. §403(x), which precludes an award of benefits for any months during which Plaintiff was incarcerated. Although ALJ Temin determined that Plaintiff was under a disability from June 1, 1999 through August 31, 2001, Plaintiff testified at his last hearing that he was not released from prison until sometime in 2000, and at least one emergency room record suggests an arrest for burglary in 2005. (Tr. 434). Although this issue was not presented by the parties, it is so obvious as to merit some review on a remand that is already required by other errors.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1.    The decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.    On remand, the ALJ be instructed to: (1) remedy the errors identified in this Report and Recommendation concerning the weight to be given to the opinions of Plaintiff's treating physician (Dr. Caudell), consulting physicians (Drs. Sheridan and Bailey), and the non-examining medical expert (Dr. Watson); (2) reconsider whether and the extent to which a negative inference should be drawn against a disability finding, based upon Plaintiff's lack of consistent treatment; and (3) review whether and to what extent an award of benefits must be modified by 42 U.S.C. §403(x).

3.    As no further matters remain pending for the Court's review, this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRIS P. BAUER,                                          Case No. 1:10-cv-516

       Plaintiff,                                    Barrett, J.
                                                        Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).